FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2010 AUG 18 PM 1:38

CL...
MIDDLE D:...ICT OF FLORIDA
JACKSONVILLE, FLORIDA

LUIS CRUZ and NIGEL DE LA TORRE

Plaintiffs,

v.

Case No.

THOMAS ARNOLD, in his official
capacity as Secretary, Florida Agency for
Health Care Administration, and

3:10-cv-725-J-99Tfc-fBT

DR. ANA VIAMONTE ROS, in her
official capacity as Surgeon General,
Florida Department of Health,

Defendants.

---

## COMPLAINT

## INTRODUCTION

1. Plaintiffs Luis Cruz and Nigel De La Torre are Florida residents who are Medicaid recipients with spinal cord injuries. They both have quadriplegia and applied for Defendants' waiver services but have not received them and are on a "wait list" for these services.

2. Messrs. Cruz and De La Torre are proposed class plaintiffs in Jones v. Arnold and Ross, C.A, #3:09-cv-1170-J-34JRK. In light of this Court May 7, 2010 with regards to Michele Haddad and given Mr. Cruz and Del La Torre's changed circumstances since they filed a motion to amend on January 27, 2010, they are filing this separate Complaint and action and motions for preliminary injunction and memorandum of law in support.

1

3. Mr. Cruz and De La Torre are Medicaid recipients who reside in the community and desire to continue to reside in the community instead of a nursing facility. They could reside in the community, with appropriate Medicaid-funded services and are at risk of being forced to enter a nursing home because Defendants do not provide adequate community-based services.

4. Since July 1, 2007, Defendants have limited community-based Medicaid services to 375 people with spinal cord injuries. Defendants will continue to limit those services to 375 people through June 30, 2012 despite the data from the following reports:

   A. The Office of Program Policy Analysis and Government Accountability and Office of the Florida Legislature reported that as of December 2009 there were 605 people on the wait list for TBI/SCI Waiver.

   B. The recently released Kaiser Commission "Medicaid Home and Community-Based Service Programs: Data Update," at Table 11, there were 434 people in Florida with spinal cord injuries on a "wait list" in FY 2008 for Medicaid community-based services.

   C. AHCA report issued in December 2008 stating that the waiting list for persons with spinal cord injuries had increased to 554 people.

5. Despite the number of people with spinal cord injuries on a "wait list" home and community-based Medicaid Waiver services, These people, who include Mr. Cruz and De La Torre, could reside in the community with appropriate Medicaid-funded services and not be forced to enter a nursing home Defendants have not increased the

number of people with spinal cord injuries who will receive community-based services.

6.  Defendants violate the Americans with Disabilities Act (ADA), Title II, 42 U.S.C. § 12132, and its implementing regulations, and Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), and its implementing regulations.  Among other things, these laws require the Department to administer its services and programs, including Medicaid, "in the most integrated setting appropriate" to the needs of the individual with disabilities.

7.  Plaintiffs Luis Cruz and Nigel De La Torre seek declaratory and injunctive relief to receive Medicaid services which will allow them to continue to reside in the community and not require their institutionalization.

**JURISDICTION AND VENUE**

8.  The Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).  Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 65.  Plaintiffs' causes of action for disability discrimination are authorized by 42 U.S.C. § 12133 and 29 U.S.C. § 794(a).

9.  Venue is proper because a substantial part of the actions and omissions of which Plaintiffs alleges occurred in this District and because a class action motion has been filed in this District.  28 U.S.C. § 1391(b).

**DEFENDANTS**

10. Thomas Arnold, is the Secretary of the Florida Agency for Health Care Administration (AHCA), and is sued in his official capacity.  AHCA is the chief health policy and planning entity for the state and is responsible for administering

3

Florida's Medicaid Program. Fla. Stat. § 20.42(3) (2006).  AHCA is the "single state agency" that operates Florida' Medicaid program, *see* 42 U.S.C. § 1396a(a)(5), and is the state agency responsible for administering Florida's nursing home and community-based long-term care system for people with disabilities.  Secretary Arnold is responsible for the oversight, supervision and control of AHCA and its divisions, and is ultimately responsible for ensuring that AHCA's services for people with disabilities are provided in conformance with federal law.

11. Defendant Dr. Ana Viamonte Ros is the Surgeon General of Florida's Department of Health (DOH) and is sued in her official capacity.  DOH is the primary state agency responsible for administering the Medicaid Traumatic Brain Injury/Spinal Cord Injury Waiver program for persons who require long-term care in the community. It recommends legislative budget requests for programs and services for the state's population who have spinal cord injuries.  The Traumatic Brain Injury/Spinal Cord Injury Waiver is supposed to prevent unnecessary institutionalization of persons like the Plaintiffs who have quadriplegia.

## PLAINTIFF LUIS CRUZ

12. Luis Cruz is 53 years old.  On March 6, 1992, when he was 34 years old, he was in a car accident and required hospitalization for about a year. As a result of the car accident, he became a quadriplegic, paralyzed from the neck down.

13. For nearly five years after he became paralyzed, he lived in both Adult Congregate Living Facilities and mental hospitals for severe clinical depression.  In the Adult Congregate Living Facilities, he was forced to share a room with four or five persons

4

and had no privacy whatsoever. In the mental hospitals, he also was forced to share rooms and his mental health deteriorated.

14. Mr. Cruz received his BA degree in Business in 1981. Prior to his paralysis, he was a professional and elite amateur athlete, including cyclist, triathlons, and swimming. He also worked as a water safety instructor and a lifeguard.

15. Luis Cruz lives alone in an accessible apartment.

16. He requires assistance with his activities of daily living, including help transferring from and to his bed and from and to a toilet. He also requires assistance bathing, cooking, and shopping for food. He wears a special condom catheter which connects to a urinary bag.

17. Presently, Defendants' Medicaid program pays for some assistance with his daily living for a few hours a day and has agreed to increase it by a minimal amount. However, this assistance very limited in time and does not provide for sufficient services to meet many of Mr. Cruz's living activities.

18. Mr. Cruz applied for the Spinal Cord Injury waiver in January, 2006 but has not received any Waiver services. Because Defendants have put Mr. Cruz on a waiting list for the Spinal Cord Injury Waiver, he does not receive assistance with a number of activities of daily living, including cooking, cleaning, laundry or transferring to bed at night.

19. Mr. Cruz has been on the waiting list for Medicaid services under the Spinal Cord Injury waiting list for nearly four years.

20. Luis Cruz has no family or other informal support to provide assistance with his activities of daily living.

21. Because he does not receive an adequate number of hours of assistance, in 2010 Mr. Cruz has had numerous hospitalizations for conditions related to the lack of personal assistance care, including decubitus ulcers. Florida's Medicaid program pays for these hospitalizations at a significant cost.

22. On occasion, Mr. Cruz has fallen from his wheelchair and has had to stay on the floor until the next day when someone arrived to assist him. Similarly, he has on one occasion slept on the bathroom tile floor for about 36 hours when the person who was scheduled to provide assistance did not show up.

23. He has also slept in his wheelchair and has urinated on himself when on occasion his leg bag was not emptied, and it overflowed because no one was available to assist him.

24. In the community, Mr. Cruz enjoys many activities, including volunteering for the local park and recreation program and also with children who have mental illnesses, for an aquatic program for people with physical disabilities, and has volunteered with the medical and physical therapy departments at the University of Miami and Florida International University doing seminars in their fertility programs.

25. He interacts and socializes with neighbors and friends, and he enjoys going out for meals and movies. Mr. Cruz visits friends and watches sports on television with them.

**PLAINTIFF NIGEL DE LA TORRE**

26. Plaintiff Nigel De La Torre is 27 years old. Before he was paralyzed, he graduated from high school in 2003 and worked as a car salesman and attended college for one year.

27. In July 2007, he was shot and robbed, and was paralyzed from the chest down. He has quadriplegia and cannot use his arms or his fingers.

28. During his five month hospitalization, Nigel De La Torre's mother applied for the Spinal Cord Injury Waiver services in October, 2007. He is still on the wait list for services in that program.

29. Defendants' Medicaid program provides assistance for an hour in the morning and one in the evening. The two hours a day are not adequate and appropriate to meet his needs and address his activities of daily living. For example, he needs assistance with preparing his meals, homemaking, and other activities of daily living.

30. Since his injury, his mother was his primary caregiver even though she (and his step-father) worked full-time. His mother is a therapist and step-father is an air condition repairman.

31. In the past, his mother provided significant assistance to supplement the two hours a day of paid Medicaid assistance he receives.

32. His mother plans to move to Spain in the very near future to join Nigel De La Torre's step-father who moved there four months ago. His brother has enrolled in the Marines and will be called to service imminently, at which time Nigel De La Torre will have no family support or assistance.

33. He resides in an apartment with an accessible bathroom and uses a motorized wheelchair for ambulation.

34. Nigel De La Torre needs help with his activities of daily living, including showering, transferring to and from his bed and assistance with a bowel program and urinary catheter.

35. Nigel De La Torre is a 200 pound, six foot one inch person.  Although his mother has helped with transferring him and other activities until she moves to Spain, she has had great difficulty assisting him because her she injured her back as a result of her assisting him.

36. At times during the day when his mother is at work and no one is available to provide assistance, his catheter has filled and he has not been able to empty it.  Because he does not have adequate in-home assistance, his mother has been responsible for his catheter and suppositories.

37. During the day, he requires assistance transferring to the toilet so he can have a bowel movement.  When no one is available to assist Mr. De La Torre during the day, he is unable to prepare lunch, take medication in the order that is prescribed, go to medical appointments, as well as other activities of daily living, including using the toilet if no one is available to assist transferring him.

38. Nigel De La Torre enjoys going to the movies, malls, and numerous other activities, including fishing with a friend.  Friends visit him, and they play dominoes and watch movies on the television.

39. Nigel De La Torre does not want to live in a nursing home, where he will not have the freedom he presently enjoys living in the community.  However, as his mother is now unavailable to assist him during the day and he receives inadequate in-home assistance, he is at risk of requiring to go into a nursing facility to receive the same services he could receive through the Spinal Cord Injury Waiver in the community.

## THE AMERICANS WITH DISABILITIES ACT

40. Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

41. Regulations implementing Title II of the ADA require that a public entity administer its services, programs and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d).

42. Regulations implementing Title II provide that "a public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration:   (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities...."  28 C.F.R. § 35.130(b)(3).

43. Defendants AHCA and DOH are public entities under Title II of the ADA and its implementing regulations.

## SECTION 504 OF THE REHABILITATION ACT

44. Section 504 of the Rehabilitation Act of 1973 provides:

> "No otherwise qualified individual with a disability in the United States..., shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."  29 U.S.C. § 794(a).

45. Regulations implementing Section 504 require a recipient of federal financial assistance to administer its services, programs, and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities.  28 C.F.R. § 41.51(d).

46. Regulations implementing Section 504 prohibit recipients of Federal financial assistance from:

> "[u]tiliz[ing] criteria or methods of administration... (i) [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap [or] (ii) [t]hat have the...effect of substantially impairing accomplishment of the recipients' program with respect to handicapped persons."

45 C.F.R. § 84.4(b)(4); 28 C.F.R. § 41.51(b)(3)(i).

47. Defendants' Medicaid program receives Federal financial assistance under Section 504 and its implementing regulations.  Federal Medicaid funds pay for approximately 55% of the cost of the Florida's Medicaid program.

48. In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. § 1396-1396v, establishing Medicaid, a medical assistance program cooperatively funded by the federal and state governments.  The purpose of Medicaid is to furnish, as far as practicable, "medical assistance on behalf of...aged, blind or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services" and "to help such families and individuals to *attain or retain capability for independence or self-care*...."  42 U.S.C. § 1396 (emphasis added).

49. The Secretary of Health and Human Services administers the Medicaid program at the federal level through the Centers for Medicare & Medicaid Services (CMS),

which has urged states pursuant to the ADA to avoid unnecessary institutionalization of person with disabilities in nursing facilities.

50. State participation in Medicaid is voluntary.  Once a state elects to participate, it must adhere to the federal legal requirements, as provided by the Medicaid Act, the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act of 1973 (Section 504).

51. The Medicaid Act allows states to provide coverage of home health nursing and personal attendant services, for persons who are otherwise entitled to receive nursing home services, if they meet the state's nursing home "level of care" requirements, e.g., need assistance with a certain number of activities of daily living.  *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(7), (8), (22).  Based on information and belief, the Plaintiffs meet Defendants' "level of care" for a nursing facility.

52. The Medicaid Act also authorizes states to obtain Home and Community-Based Service (HCBS) waivers from CMS to provide for alternatives to nursing home care and services. Waiver programs cover a range of home-based services for Medicaid recipients. *See* 42 U.S.C. § 1396n(c).

53. Defendants have applied to CMS for a Medicaid Waiver entitled the "Traumatic Brain Injury/Spinal Cord Waiver" for only 375 people.  Defendants will limit Traumatic Brain Injury/Spinal Cord Waiver" services to 375 people through June 30, 2012despite knowing that the Office of Program Policy Analysis and Government Accountability and Office of the Florida Legislature reported that as of December 2009 there were 605 people on the waiting list for this Waiver.

11

54. Defendants will limit their waiver despite the November 24, 2009 Kaiser Commission's findings in its report entitled "Medicaid Home and Community-Based Service Programs: Data Update"that there were 434 people with spinal cord injuries on a "wait list" in FY 2008 for these community-based services. (See Table 11) and AHCA's own December 2008 data showing the SCI Waiver waiting list had increased to 554 people. Despite this waiting list, Defendants have not increased the number of people with spinal cord injuries who will receive community-based waiver services. The people with SCI on the waiting list could reside in the community with appropriate Medicaid-funded services and not be forced to enter a nursing home.

55. Defendant AHCA is designated as the "single state agency" responsible for the administration and supervision of Florida's Medicaid Program under Title XIX of the Social Security Act.

56. Under the Medical Assistance Act, the Defendants are required to administer the Florida's Medicaid program in conformity with federal law, including the ADA and Section 504.

**FIRST CLAIM FOR RELIEF**
**Title II of the Americans with Disabilities Act**

57. Plaintiffs Cruz and De La Torre are individuals with disabilities in that they have physical and other impairments that substantially limit one or more of their major life activities, including but not limited to  walking, bathing, toileting, eating and standing.

58. Plaintiffs Cruz and De La Torre are qualified persons with disabilities in that they are capable of safely living at home with necessary services and they meet the essential

12

eligibility requirements for the receipt of services from and participation in the State Medicaid program with reasonable modification to the rules, policies, and practices of that program, 42 U.S.C. §12131(2).

59. Without reasonable modification of the rules, policies, and procedures governing the Florida's Medicaid program, Plaintiffs Cruz and De La Torre are at a risk of being isolated and segregated into an institutional setting.  This is against their will, and they do not want to be placed into a nursing home.

60. Defendants' denial of Medicaid funding for the in-home health services that Plaintiffs require to avoid segregation in an institution and remain in the integrated home settings that is appropriate to their needs, constitutes unlawful discrimination in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 130.51(d).

61. Defendants have utilized criteria and methods of administration that subject Plaintiffs to discrimination on the basis of disability, including unnecessary institutionalization, by (1) failing to assess properly the services and supports that would enable Plaintiffs to remain in the community and (2) failing to ensure that Plaintiffs have access to Medicaid-covered services that will meet their needs in the community, in violation of Title II of the ADA and implementing regulations.

62. Providing community-based services to Plaintiffs is not a fundamental alteration of Defendants' programs.

13

## SECOND CLAIM FOR RELIEF
## Section 504 of the Rehabilitation Act

63. Plaintiffs Cruz and De La Torre are "qualified person with disabilities" within the meaning of Section 504.   They have physical and/or mental impairments that substantially limit one or more major life activities, and they meet the essential eligibility requirements for long term care under Florida's Medicaid program.

64. Defendants' denial of Medicaid funding for the in-home health services that Plaintiffs require to avoid segregation in an institution and remain in the integrated home settings that is appropriate to their needs constitutes unlawful discrimination in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), and its implementing regulation, 28 C.F.R. §41.51(d).

65. Defendants have also utilized criteria and methods of administration that subject Plaintiffs to discrimination on the basis of disability, including risk of unnecessary institutionalization, by (1) failing to assess properly the services and supports that would enable Plaintiffs to remain in the community and (2) failing to ensure that Plaintiffs has access to Medicaid-covered services that will meet their needs in the community, thereby violating Section 504 and its implementing regulations.

66. Providing community-based services to Plaintiffs is not a fundamental alteration of Defendants' programs.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs and the class respectfully request that the Court grant the following relief:

14

A. Declare that the Defendants' denial of funding for Plaintiffs' necessary and appropriate Medicaid in-home nursing services constitutes unlawful discrimination in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

B. Grant preliminary and permanent injunctions enjoining the Defendants, their officers, agents, employees, attorneys, and all persons who are in active concert or participation with them from denying Plaintiffs Cruz and De La Torre Medicaid in-home nursing services "in the most integrated setting," their home, including to the extent to which Plaintiffs' service needs can and will be met by enrolling them in the existing Home and Community-Based Services waiver.

C. Waive the requirement for the posting of a bond as security for the entry of preliminary relief.

D. Award the Plaintiffs the costs of this action and reasonable attorney's fees pursuant to 29 U.S.C. § 794a and 42 U.S.C. § 12133 and any other applicable provision of law.

E. All such other and further relief as the Court deems to be just and equitable.

Dated: August 17, 2010

Respectfully submitted,


Stephen F. Gold
PA Bar No. 09880
1709 Benjamin Franklin Parkway
Second Floor
Philadelphia, PA 19103
(215) 627-7100, ext 227
Facsimile:  215-627-3183
stevegoldada@cs.com

**SPOHRER & DODD, P.L.**


Jay M. Howanitz, Esq.
Florida Bar No. 0020967
701 West Adams Street, Suite 2
Jacksonville, Florida 32204
Telephone: (904) 309-6500
Facsimile:  (904) 309-6501
Email: jhowanitz@sdlitigation.com

*Counsel for the Plaintiff*

16